## Musgrave *versus* Beckendorff.

The measure of damages for a breach of a contract to replace borrowed stock, is the highest price it had reached between the breach and the trial.

ERROR to the Court of Common Pleas of *Allegheny county*.

This was an action of assumpsit, by Daniel E. Beckendorff against Benjamin S. Musgrave, to October Term 1865.

The suit was for fourteen bonds of Missouri State Stock of $1000 each, loaned on the 26th of March 1861, by the plaintiff to the defendant, to enable the defendant to raise money on them. The defendant was to return the identical bonds within two years, and in the mean time to pay interest on them. The bonds were not returned.

The proof was that the market price of these bonds had varied much from the time of the loan until the time of the trial, January 16th 1866—the lowest price having been about 40 per cent., and, in September 1865, about 78 per cent.—this was the latest time of which there was testimony. Several questions were raised in the Court of Common Pleas, but the only one considered in the judgment of the Supreme Court was as to the measure of damages.

On that question Judge Stowe charged the jury:—

"The standard of damages is the highest market price, from the time the defendant was bound to return the bonds up to the time of trial."

The jury found a verdict for the plaintiff for $11,620, estimating the bonds at their latest value proved before the trial.

*R. & S. Woods*, for plaintiff in error.—Bank of Montgomery *v.* Reese, 2 Casey 143, and Reitenbaugh *v.* Ludwick, 7 Id. 131, upon which the court below ruled the question of damages, were cases of trustees who would not account. They do not resemble this case. This stock could have been replaced after it was to have been returned, and the defendant would then have been liable

[Musgrave v. Beckendorff.]

for the price paid, and interest.   A party who violates a contract is liable only for the damages which result necessarily from his act before suit is brought.

*G. Shiras*, Jr., for defendant in error.—The rule contended for by the plaintiff in error is the rule ordinarily applicable to the case of a failure to deliver personal property under a contract of sale.

In Pennsylvania the following late cases have settled the law: Bank of Montgomery *v.* Reese, 2 Casey 143; Reitenbaugh *v.* Ludwick, 7 Id. 131.   The distinction is between articles of; determinate value and unlimited production, and those, like bank stock or state bonds, subject to rapid fluctuation in the market, and not necessarily to be found in the market at any given time.

Another distinction has been taken, and is applicable to a case like the present.   Where the plaintiff has paid for the articles sold, the proper standard of his damages is the highest market price up to the time of trial, because, having parted with his money, he has no means with which to go into the market and buy at the time of the breach; so here, the plaintiff, whose money is locked up in his bonds, which are in the possession of the defendant, cannot be expected to have the ability to buy bonds at the time of the breach, even if there were such bonds in the market at that time—of which there is no proof.

He cited also, West *v.* Wentworth, 3 Cowen 82; Clark *v.* Pinney, 7 Id. 681; Greening *v.* Wilkinson, 1 C. & P. 625; Shepherd *v.* Johnson, 2 East 211; McArthur *v.* Seaforth, 2 Taunt. 257; Harrison *v.* Harrison, 1 C. & P. 412.

The opinion of the court was delivered, January 7th 1867, by

Read, J.—The question on this case is, what is the measure of damages on a loan of fourteen bonds of $1000, twelve of which were State of Missouri sixes, and two Hannibal and St. Joseph Railroad bonds, upon an agreement to return the identical bonds in two years, with interest.   Baron Parke, a great authority, in Shaw *v.* Holland, 15 M. & W. 145, says: " With respect to the amount of damages, I was at first disposed to think that this was like the case of an action for not replacing stock, in which the measure of damages is the difference of price on the day it was to have been replaced and on the day of trial."

In Owen *v.* Routh, 14 C. B. 327 (78 E. C. L. R.), it was held, that the true measure of damages in an action for not redelivering shares lent to the defendant, upon a·contract to return them upon a given day, is not the market price at the time of the breach, but the market price at the time of the trial.   The previous authorities were cited, and Lush said: " All the authorities, it must be conceded, are in favor of the plaintiff's view as to the

last point.   It would be vain to attempt to induce the court to come to a different conclusion, assuming that the measure is to be, not the highest price at any intermediate day, but the price on the day of the trial."   Chief Justice Jervis said : " Mr. Lush has very properly conceded that he is bound by the authorities upon the question as to the proper measure of damages in this case, which are to be estimated at the market price of the shares at the time of the trial."

In Vàughan *v.* Wood, 1 Mylne & K. 403, it was held by Sir John Leach, Master of the Rolls, " that where a bond is given by the borrower of a sum of stock, to secure the replacement of the stock, and payment in the mean time of sums equal to the interest and dividends, and a *bonus* is afterwards declared upon the stock, the lender has an equity to be placed in the same situation as if the stock had remained in his hands, and is consequently entitled to the replacement of the original stock increased by the amount of the *bonus*, and to the dividends in the mean time as well upon the *bonus* as upon the original stock:" Mayne on Damages 83 (92 Law Lib.).   In Clark *v.* Pinney, 7 Cowan 687, the court say, " Most of the cases in which this principle has been adopted have grown out of contracts for the delivery and replacing of stock, and it is believed there is no case to be found in *England*, in which the damages have been confined to the value of the stock at the time when it should have been replaced, where the action was brought upon the contract itself, and the question was distinctly presented and passed upon by the courts, it appearing affirmatively that the stock was subsequently of greater value."

In Romaine *v.* Van Allen, 12 Smith 309 (26 N. Y.), it was held in a case where the trial was before a referee, and commenced on the 25th October 1861, and was concluded on the 25th July 1862, in an action for the wrongful conversion of shares of corporate stock, that the plaintiff was entitled to recover the highest price it had reached between the time of conversion and the end of the trial.   The price of the stock rose during the continuance of the trial from $5962 to $8175.   It is clear, from the language of the court, that the English measure of damages, in actions for refusal to replace or return borrowed stock, is approved substantially by the Court of Appeals in New York.   And this is clearly the rule in Connecticut : Waite *v.* Pritchard, 19 Conn. 212.

The language of the court in The Bank of Montgomery *v.* Reese, 2 Casey 147, certainly sustains this view of the proper measure of damages, which is certainly applicable to a case like the present, where the value is the highest at the time of trial.   The jury took the highest value of the stock just preceding the trial, there being no later estimate submitted, and there is, therefore, no error under the charge of the court.

                                        Judgment affirmed.