676 P.2d 730

**Lester BROERSMA; and Vernon Wells and Nancy Wells, Plaintiffs-Respondents,**

v.

**Geraldine SINOR and Dick Andersen, Defendants-Appellants.**

**No. 14179.**

Court of Appeals of Idaho.

Feb. 14, 1984.

Daniel P. Featherston, Sandpoint, for defendants-appellants.

Bruce H. Greene, Sandpoint, for plaintiffs-respondents.

McFADDEN, Judge, Pro Tem.

This is an appeal from a judgment in favor of two loggers who sued their employers for lost compensation and for the employers' alleged conversion of a skidder used in the logging operation. Compensatory and punitive damages were awarded. We affirm the judgment in part and reverse in part, remanding the cause for modification of the judgment as explained below.

The trial court found the facts essentially as follows. Prior to the fall of 1978, Lester Broersma and Vernon Wells (referred to herein as respondents) were engaged in contract logging. Appellant Andersen represented to the respondents that he had timber property available for logging and that he had enough work to keep them busy for at least five years. While still employed in their previous logging operations, respondents started logging on a weekend basis for appellant Andersen. Unbeknownst to respondents, the timberland was in the name of appellant Sinor. Based upon appellant Andersen's representations of five years prospective continuation of logging operations, the respondents left their previous employment in November or early December, 1978. The respondents' "skidder cat" became inoperable during their first job for the appellants. Ultimately in order to continue logging, the respondents purchased a 1972 rubber-tired skidder which they financed through a bank, borrowing $8,504 at 13% interest evidenced by a promissory note and security agreement covering the skidder. The parties entered into a side agreement that the appellants would repay the note and be reimbursed through deductions from respondents' compensation for the logging operations. The parties later stipulated that a total of $1,268.90 was withheld from respondents' compensation and paid to the bank; that respondents directly paid the bank interest in the sum of $83 for a total contribution of $1,351.90; and that appellant Sinor paid the bank $7,213.10, the remaining balance, for which she had not been reimbursed.

In January, 1979, the logging operation ceased due to weather conditions. The appellant Andersen represented that respondents would have further work on property at a lower elevation, but it ultimately developed that appellants had no such property. Neither did they have property to keep respondents working for the promised five years. Respondents did not obtain other employment until late May or early June, 1979.

In mid-August, 1979, while the respondents had possession with legal title to the skidder, appellants removed the skidder from their possession. The appellants gave notice to the respondents claiming that they had "repossessed" the skidder, and that if the respondents did not redeem the skidder by September 5, 1979, that it would be sold at a private sale. After petition by the respondents, the district court issued a writ of possession. This writ was never executed by the sheriff apparently because the appellants had secreted the skidder. The appellants retained possession of the skidder for twelve months before it was returned.

The respondents filed this action for conversion, claim and delivery of the skidder, and damages. The appellants answered and, as an affirmative defense, alleged that Andersen was acting as Sinor's disclosed agent, that Sinor had paid all amounts due under the promissory note and that therefore Sinor was subrogated to the bank's rights under the note and security agreement. The appellant Sinor counterclaimed seeking recovery of the note balance she

had paid ($7,213.10) plus accrued interest. and attorney fees. Trial was held by the court sitting without a jury. During trial, evidence beyond the scope of the issues framed by the pleadings was offered by both parties and admitted without objection by the other party. The trial court by memorandum decision held that an agreement had been formed between the parties, that the appellants had breached the agreement by not having the represented timber to be logged, that the skidder belonged to the respondents, and that the appellants were liable for conversion of the skidder. The court awarded damages for breach of contract in the amount of the respondents' lost wages, loss of the stipulated rental value of the skidder for the stipulated twelve months that the skidder was in the appellants' possession, the cost of necessary repairs to the skidder to place it back in operating condition, and punitive damages. The court denied the counterclaim.

■ Appellants first argue that the trial court erred in awarding respondents loss of wages because (1) the issue had not been pleaded and (2) even if the issue was properly before the court, "lost wages" was an incorrect measure of damages. The trial court awarded each respondent $10,000 as lost wages for the four months they were unemployed. Although the respondents' pleadings did not specifically request recovery for lost wages, the trial court found that the issue was submitted for resolution with the express and implied consent of the parties. Testimony was taken without objection as to respondents' net earnings for the four month period they were unemployed. Under the state of the record, we hold that the trial court did not err by ruling that the question of lost compensation was properly an issue for resolution.

■ Appellants contend, in the alternative, that the trial court applied an improper measure of damages, claiming that a "lost profits" formula should have been used. Respondents testified that they were employed at the time appellant Andersen approached them and were then earning $2,500 *net* per month. Respondents

left that employment to work for appellants. The measure of damages for breach of contract are those which will "fairly compensate the injured party for his loss." *Anderson v. Gailey*, 100 Idaho 796, 800, 606 P.2d 90, 94 (1980), quoting *O.A. Olin Co. v. Lambach*, 35 Idaho 767, 772, 209 P. 277, 278 (1922). By leaving their previous employment, respondents were damaged in an amount of at least what their previous employment had generated. There was evidence, albeit conflicting, that appellant Andersen represented that respondents would make at least what they were making at their previous employment. The award of damages for lost compensation is supported by substantial evidence and will not be disturbed.

■ The second issue raised by appellants is whether the trial court erred in failing to find that they were subrogated to the rights of the bank when Sinor paid off respondents' loan on the skidder. There was no assignment from the bank by which appellants would be substituted to the rights of the bank when they paid off respondents' loan. Only the respondents were obligated on the note and appellant Sinor was, therefore, acting as a volunteer when she repaid the loan. Appellants were thus not entitled to be subrogated to the rights of the bank arising from its security interest in the skidder. *See May Trucking Co. v. International Harvester Co.*, 97 Idaho 319, 543 P.2d 1159 (1975).

■ However, the fact remains that the parties had a side agreement for the appellants to pay the bank and for the respondents to reimburse them. Appellant Sinor paid the $7,213.10 for which she received no reimbursement. This payment allowed the respondents to receive clear title to the skidder worth at least $8,500. The trial court held that the appellants' breach of the contract discharged the respondents' obligation to reimburse. As a result, the trial court did not credit the unreimbursed amount against the breach of contract damages. We hold that this was error.

"[T]he purpose of awarding damages for breach of contract is to fully recompense the non-breaching party for its losses sustained because of the breach, not to punish the breaching party. Application of this principle of course requires that the court in fixing damages account for the savings which inure to the non-breaching party because he is relieved of his duty to perform by the breach." *Anderson v. Gailey*, 100 Idaho 796, 801, 606 P.2d 90, 95 (1980).

We believe that the rules presented in the Restatement of Contracts § 335 (1932) and the Restatement (Second) Contracts § 374(1) (1981) are supportive. Section 335 provides that "[i]f the defendant's breach of contract saves expense to the plaintiff by discharging his duty of rendering a performance in return ..., the amount of this saving is deducted from the damages that would otherwise be recoverable." Section 374(1) provides that

> "if a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach."

The appellant Sinor benefited the respondents when she repaid the loan. This benefit was to be returned to the appellants by reimbursement during the life of the contract. The breach of the contract saved the respondents this expense which in fairness must be offset against the judgment in the respondents' favor.

Finally, appellants also contend that the trial court erred in awarding $1,000 as punitive damages for the surreptitious removal and retention of the skidder. Appellants base this argument on the theory, which we have rejected, that they should have been subrogated to the rights of the bank. However, in our view, even if the appellants had entertained a good faith view that they had subrogation rights when they initially took the skidder, this would not excuse keeping the skidder for the ensuing twelve months. The trial court found that appellants acted willfully, maliciously and wantonly.

"An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was 'an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences.' *Hatfield v. Max Rouse & Sons Northwest*, supra, 100 Idaho [840,] at 851, 606 P.2d [944,] at 955 [ (1980) ]."

*Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 905, 665 P.2d 661, 669 (1983). The trial court's findings in the present case are within the requirement of *Cheney*. These findings are sustained by the evidence. The award of punitive damages will not be overturned.

The judgment of the trial court is affirmed in part and reversed in part. On remand the trial court is directed to reduce the judgment as to the appellant Sinor by an amount appropriate to reflect the offset due her as discussed above. No costs or attorney fees allowed.

WALTERS, C.J., and BURNETT, J., concur.