(No. 6266. April 23, 1936.)

MARIE JENSEN, Respondent, v. OTIS WOOTERS, Appellant.

[57 Pac. (2d) 340.]

C. M. Jeffery, for Appellant.

F. E. Tydeman and B. W. Davis, for Respondent, cite no authorities on points decided.

BUDGE, J.—This is an action brought by respondent against appellant for damages upon an alleged breach of an oral agreement growing out of the purchase of a certain restaurant known as the Circle Shop owned by or held in the name of Ora Ball, an employee of appellant.

From the facts it appears that appellant offered to sell the restaurant to respondent. Respondent was not financially able to place with the Idaho Power Company and the Public Utilities Consolidated Corporation, referred to in the proceedings as the gas company, the necessary and required deposits to secure the services rendered by said companies and which were necessary in carrying on the restaurant business. The accounts of the Circle Shop with the gas company and the Idaho Power Company were at the time carried in the name of appellant and appellant had on deposit with the Idaho Power Company as required by its rules and regulations $100 and also had a credit with the gas company to insure payment for service rendered to said restaurant. For the purpose of promoting and inducing respondent to enter into an agreement of purchase of the furniture, fixtures and equipment of the Circle Shop appellant agreed with respondent that he would permit the accounts to remain in his name, permit the deposit to remain in the hands of the Idaho Power Company and permit the credit to remain with the gas company and would also leave in the cash register $20 in change, thereby making it possible for respondent to carry on the business. In pursuance to the agreement entered into between respondent and appellant and an agreement of purchase thereafter entered into between respondent and Ora Ball, appearing as the record owner of the restaurant, respondent delivered on the purchase price of the fixtures and equipment a note signed by one H. C. Nelson, which she then owned, and further agreed to pay the sum of $8 a day, $2 thereof to be applied on the purchase price and $6 a day to pay general expenses such as gas, electricity, rent, etc., the aforementioned amounts to be paid each day to Ora Ball and by her distributed. Respondent went into possession of the restaurant July 9, 1932, and continued in possession until November 3, 1932, during which time she made the payments stipulated in the agreement of purchase with Ora Ball, many of these payments being made to appellant, who, while claiming the Circle Shop did not belong to him and that he had a mortgage of approximately $2,000 thereon, continued his interest therein and insisted upon and collected many of the payments due by the terms of the agree-

ment between respondent and Ora Ball. On or prior to November 3, 1932, after notifying respondent of his intention so to do, appellant called upon the Idaho Power Company and notified it that he would no longer be responsible for the payment for electric service furnished respondent and likewise called upon the gas company withdrawing his credit and notifying said company he would no longer be responsible for the payment for gas furnished respondent. Respondent likewise visited the Idaho Power Company and also the gas company and implored them to permit her to continue operating her business and for them to continue rendering their service without a deposit, explaining that she was in no financial condition to make the deposit. She was informed that no service could be rendered to her by either the Idaho Power Company or the gas company without putting up the necessary and required deposits. In this situation, through her agent, respondent delivered the keys to the premises to appellant or his agent and suspended business. There is a conflict in the evidence as to some of the facts heretofore related. The cause was tried to the court and a jury resulting in a judgment in favor of respondent, from which this appeal is prosecuted.

Appellant relies upon nine assignments of error, the first six of which are predicated upon the action of the court in denying appellant's motions for nonsuit, directed verdict, judgment notwithstanding the verdict and new trial. All of these assignments may be disposed of under the last error assigned which is to the effect that the evidence was insufficient to authorize the verdict. We have carefully examined the record and reach the conclusion that there was sufficient competent evidence to support the verdict and judgment entered thereon. The evidence clearly established the fact that appellant in order to induce respondent to enter into the contract heretofore referred to agreed with her that the $100 deposit with the Idaho Power Company should remain with said company and that the account would be carried in his name and further agreed that the credit at the gas company would remain with said company and the account should remain in his name until respondent was in a position to pay off the $100 deposited by appellant with the power

company and to take care of the credit with the gas company. It further clearly appears that respondent relied and acted upon the agreement made with her by appellant and that she carried out her contract in good faith up until the time appellant breached his agreement and that she sustained damages as a result of the breach in the loss of the $2 a day paid on the purchase price and in the loss of the note payment, to which reference has been made, as well as other damages. It further appears from the evidence, though conflicting, that appellant breached the contract in that he withdrew the accounts with the power and gas companies from his name and notified them he would no longer be responsible for payment for services rendered in the furnishing of gas or electricity to respondent, which action on the part of appellant, in view of respondent's conversation with the gas and power companies and their replies, forced respondent to close her business. There is a sharp conflict in the evidence as to when the gas and electricity were actually turned off, which as the evidence shows was a matter entirely with the power and gas companies, these services not being left on in order that respondent might continue the business. The breach consisted and was completed when appellant notified the gas and power companies he would no longer be responsible for the services rendered and had the accounts removed from his name, thereby making it impossible for respondent to secure said services and carry on her business in view of the requirement that there be a deposit to guarantee payment of such accounts before service could be rendered her.

Appellant seeks to predicate error upon the action of the court in refusing to give a portion of his requested instruction number 1, reading as follows:

"And if you find that there was a breach by the defendant before the time the plaintiff closed the restaurant, and that there was no later agreement permitting the defendant to withdraw the deposit, then you are instructed as a matter of law, *the plaintiff having failed to establish by the preponderance of the evidence the amount of damages in dollars and cents, and having failed to establish any facts from which you can compute the damages in dollars and cents, the plaintiff could recover only nominal damages,* and by nominal

damages is meant some small sum such as one dollar.'' (Italics supplied.)

This portion of the instruction was properly refused. There was evidence from which actual damages could be computed, the greater portion of the damages awarded being subject to accurate computation in dollars and cents. One hundred receipts showing payment of $8 each were admitted in evidence, the testimony disclosing that at least $2 of each of said one hundred payments was paid upon the purchase price, and also respondent's exhibit ''B'' admitted in evidence for such purpose shows the amount of credit given for the Nelson note to be $588.79.

It is likewise insisted that the court erred in refusing to give appellant's requested instruction number 3 touching the question of damages, appellant's position being that even conceding a breach of the contract by appellant there was no evidence on respondent's behalf to establish actual damages, or as stated in the instruction: ''In other words, where plaintiff establishes a cause of action but fails to show any damages, he may recover nominal damages only.'' Respondent established actual damages by reason of the breach, which damages were the natural and direct or proximate consequences of the wrongful act complained of. (*Stoddard v. Ploeger,* 42 Ida. 688, 247 Pac. 791; 17 C. J. 728, sec. 69.) Respondent lost the substantial down payment, the 100 payments of $2 a day applied on the purchase price, together with interest upon both amounts, her growing business which had been paying for itself and furnishing a living for respondent and her family was closed and she and her family were thrown out of employment, all of which was the natural, direct and proximate consequences that followed appellant's action in ordering the electricity and gas accounts to be withdrawn from his name and advising that he would no longer be responsible for payment thereof. The established rule in actions for breach of contract is that only such damages will be allowed as fairly compensate the injured party for his loss. (*Olin Co. v. Lambach,* 35 Ida. 767, 209 Pac. 277, 44 A. L. R. 354.) The amount awarded appears to be easily within the evidence.

The judgment is affirmed with costs awarded to respondent.

Givens, C. J., and Morgan, Holden and Ailshie, JJ., concur.